# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES JOSEPH HORNE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:13-cv-00226 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff James Joseph Horne ("Mr. Horne") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), who denied his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383(f), respectively.

## I.   BACKGROUND AND FACTS

Mr. Horne was born on August 6, 1985. ECF No. 10-2 at 43. He completed one year of education at Pittsburgh Technical Institute and has no vocational or specialized training. *Id.* at 44; ECF No. 10-8 at 59. Mr. Horne worked as a prep cook at various restaurants from 2002 to April 2008. ECF No. 10-2 at 45-47. He suspects that he was terminated from his most recent job at a casino due to physical limitations. *Id.* at 47-48.

Mr. Horne alleges disability as of April 1, 2008 due to bilateral slipped capital femoral epiphyses (a degenerative condition in his hips), severe chronic arthritis, degenerative joint disease,

obesity, migraine headaches, hypertension, and pain in his lower back, knees, and hips. ECF No. 13 at 2. The record reflects that he has not engaged in substantial gainful work activity since alleging disability in April 2008. ECF No. 10-2 at 21.

Mr. Horne initially filed applications for DIB and SSI on December 3, 2009, in which he claimed total disability since April 1, 2008. *Id.* at 19. His claims were denied by the State Agency on March 30, 2010. *Id.* An administrative hearing was held on June 30, 2011 before Administrative Law Judge Guy Koster ("ALJ"). *Id.* Mr. Horne was not represented by counsel at the hearing. *Id.* After being advised of his right to representation, he chose to proceed without an attorney and testified. *Id.* Mr. Horne's wife, Rebecca, and Samuel Edelman, an impartial vocational expert ("VE"), also testified at the hearing. *Id.*

On August 19, 2011, the ALJ rendered a decision unfavorable to Plaintiff in which the ALJ found that Plaintiff was not under a disability, as defined by the Act, at any time from the alleged onset date of April 1, 2008, through the date of the decision. *Id.* at 28. The ALJ's decision became the final decision of the Commissioner on January 2, 2013, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. *Id.* at 2-4.

On February 13, 2013, Mr. Horne filed his Complaint in this Court, seeking judicial review of the decision of the ALJ. ECF No. 3. The parties have filed Motions for Summary Judgment, ECF Nos. 12 and 17, and respective Briefs in Support, ECF Nos. 13 and 18. Mr. Horne has filed a response to the Commissioner's Motion for Summary Judgment. ECF No. 19. He contends that the ALJ erred in numerous respects – by failing to find that his condition met or equaled one of the Listed Impairments found at 20 C.F.R. § 404, subpt. P, app. 1, by failing to call a medical expert to testify as to the issue of equivalency to a Listed Impairment, by misconstruing the opinion of the

State Agency medical adjudicator, and by failing to adequately develop the record in several ways. The Commissioner contends that the decision of the ALJ should be affirmed, as it is supported by substantial evidence. The Court concludes that the ALJ failed to adequately develop the record and erred in determining Mr. Horne's RFC, and will therefore vacate the ALJ's decision and remand the case for further proceedings consistent with this Opinion.

## II.      STANDARD OF REVIEW

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g), 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. Compare 20 C.F.R. § 416.920 with § 404.1520."); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d Cir. 2000) (stating claimants' burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. This

process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a Listed Impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. § 404, subpt. P, app. 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once the claimant shows he is unable to resume his previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he is able to perform

4

substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one such impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. ECF No. 10-2 at 27-28. The ALJ concluded that while Mr. Horne did have a number of severe impairments – degenerative joint disease in his hips, status post-surgical hardware placement for history of Legg-Perthes disease, obesity, migraine headaches, and hypertension – he did not have an impairment or combination of impairments that "met or medically equaled" a Listed Impairment during the relevant period. *Id.* at 21-22. The ALJ then found that Mr. Horne retained the residual functional capacity ("RFC") to perform sedentary work where he would have a sit/stand option, would only be occasionally required to balance, stoop, or crouch, would never be required to bend, kneel, squat, crawl, or climb ropes, ladders, or scaffolds, and could avoid hazards such as heights and moving machinery. *Id.* at 22.

In making this determination, the ALJ first considered Mr. Horne's subjective complaints of physical symptoms and found that while his medically determinable impairments could reasonably

5

be expected to cause the symptoms he claimed he suffered, his complaints exceeded the severity of impairment shown by the objective medical evidence and were not credible to that extent. *Id.* at 23-24. According to the ALJ, while the medical records showed that Mr. Horne had three major surgeries during his childhood, where doctors inserted and re-inserted plates and pins into his hips to correct an adolescent hip disorder, in the intervening years he "did not generally receive the treatment one would expect" for an individual claiming the physical pain and impairment Mr. Horne alleged. *Id.* at 23, 25. The ALJ pointed to what he viewed as a lack of treatment in Mr. Horne's medical records – no record of treatment before October 2009, no recorded medical appointments between October 2009 and July 2010, 5-month intervals between follow-up appointments after December 2010, and only one visit to an orthopedic specialist, in July 2010 – as support for his conclusion. *Id.* at 25. The ALJ also considered that Mr. Horne declined a corticosteroid injection for pain relief from Dr. Joseph Stracci ("Dr. Stracci"), the orthopedic specialist he visited in July 2010, and never returned for more treatment. *Id.* at 25-26.

The ALJ further noted that Mr. Horne's doctors did not prescribe him medication for hypertension, medical records indicated that his blood pressure was under control as of May 2011, and Mr. Horne did not pursue treatment other than pain medication. *Id.* at 26. The ALJ generally characterized Mr. Horne's record of treatment as "routine and conservative in nature." *Id.* Finally, he noted that Mr. Horne's "functional abilities remained generally intact," citing to physical examinations in the record finding normal range of motion in his joints, as well as a February 2010 Function Report in which Mr. Horne stated that he did daily household chores, prepared simple meals, could lift but not carry 20 pounds, walked his dog, drove a car, shopped for groceries, and visited his parents and in-laws twice a week. *Id.* The ALJ also gave significant weight to the March

6

2010 assessment of Dr. Juan Mari-Mayans ("Dr. Mari-Mayans"), the State Agency medical adjudicator. *Id.* Dr. Mari-Mayans' assessment stated that Mr. Horne could lift and carry 10 pounds occasionally and slightly less than 10 pounds frequently, could stand and walk slightly less than two hours per 8- hour day, could sit for about 6 hours per 8-hour day, and could perform all postural activities on an occasional basis. *Id.* Pursuant to this evidence, the ALJ concluded that Mr. Horne's testimony regarding his subjective degree of pain was not fully credible. *Id.*

Based upon the testimony of the VE, the ALJ next concluded that Mr. Horne could not return to his past work as a prep cook. *Id.* at 27. However, based on further VE testimony that jobs existed in significant numbers in the national economy that an individual with Mr. Horne's age, education, work experience, and RFC could perform – including telephone solicitor, telephone clerk, and charge accountant – the ALJ found that Mr. Horne was capable of making a successful adjustment to other work during the relevant period, and therefore was not disabled within the meaning of the Act. *Id.* at 28.

### III.     DISCUSSION

As set forth in the Act and applicable case law, this Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff advances four principal arguments for granting his Motion for Summary Judgment. First, he argues that the ALJ erred at step three of the evaluation in finding that his condition did not

meet or equal in severity Listings 1.02A and/or 1.03, and by failing to elicit testimony at the hearing from a medical expert as to the equivalency of his condition to a Listed Impairment. Second, he argues that the ALJ erred in determining his RFC by misconstruing the opinion of the State Agency medical adjudicator as a finding that he could work 8 hours a day under certain conditions. Third, Mr. Horne contends that the ALJ failed to adequately develop the record in several respects – by failing to obtain certain medical records, by failing to order a consultative examination, and by failing to properly develop his mental capacity and educational level. Finally, Plaintiff argues that the ALJ erred by failing to pose hypothetical questions to the VE that reflected all of his impairments. The Court will address each issue in turn.

## A. The ALJ's Determination that Plaintiff's Impairments did not Meet or Equal a Listed Impairment

At step three, the claimant bears the burden of presenting medical evidence to show that his impairment matches a listing or is equal in severity to a listed impairment. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000) (citing *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992)). The Supreme Court has defined this burden:

> For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity in *all* the criteria for the one most similar listed impairment. A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.

*Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).

8

The Court concludes that substantial evidence supported the ALJ's determination that Mr.

Horne's impairments did not, alone or combined, match or equal Listings 1.02A or 1.03. Listing

1.02 provides, in relevant part:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> (A) Involvement of one major peripheral weight-bearing joint (i.e., hip, knee or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt, P, app. 1.

> Listing 1.00B2b reads as follows:
>
> b. What We Mean by Inability to Ambulate Effectively
>
> > (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
> >
> > (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

9

Evidence in the record contradicts several of the specified medical criteria contained in Listing 1.02A. Mr. Horne's physical examinations of October 2009, and July, August, and December 2010 indicated that he had full range of motion. ECF No. 10-2 at 24-25. Additionally, the Court was not able to locate medical findings in the record showing that Mr. Horne was unable to ambulate effectively as defined by Listing 1.00B2b. Pursuant to a July 2010 physical examination, Dr. Thugu Reddy ("Dr. Reddy") noted that Mr. Horne's gait was normal. *Id.* At the administrative hearing, Mr. Horne testified that he used a cane to walk, but that it was not prescribed by a doctor. *Id.* at 52. In his February 2010 Function Report, he stated that he walked his dog, drove his wife to work, visited his parents and in-laws every week, and shopped for groceries on a routine basis – activities that conflict with the definition of ineffective ambulation. *Id.* at 26. Because the Listings are strictly construed against claimants, *Lee v. Astrue*, 2007 WL 1101281, at *4 (E.D. Pa. Apr. 12, 2007), and Mr. Horne failed to present medical findings that he was unable to ambulate effectively, the ALJ's decision that his impairments did not meet or equal a Listed Impairment was supported by substantial evidence.[1]

Whether the ALJ erred in failing to elicit testimony from a medical expert on the issue of equivalency is a separate issue. Where the record as it exists at the time of the administrative hearing fairly raises the question or is inconclusive as to whether the claimant's impairment meets or equals a Listed Impairment, courts have held that a medical expert should evaluate the issue. *Maniaci v. Apfel*, 27 F. Supp. 2d 554, 557 (E.D. Pa. 1998); *Diehl v. Barnhart*, 357 F. Supp. 2d 804, 815 (E.D. Pa. 2005); *Lee*, 2007 WL 1101281 at *4. However, an ALJ is not required to obtain an expert opinion as to whether an impairment meets or equals a listing, *Cordovi v. Barnhart*, 2005 WL

---

[1] Because Listing 1.03 also requires that the claimant be unable to ambulate effectively, the Court's conclusion applies to

10

3441222, at *3 (E.D. Pa. 2005), and is fully competent to make an equivalency determination. *Oakes v. Barnhart*, 400 F. Supp. 2d 766, 774-78 (E.D. Pa. 2005).

It appears to the Court that Mr. Horne produced no medical evidence that would satisfy the requirements of Listing 1.00B2b. Additionally, evidence in the record, including his own statements, showed that his impairments did not satisfy that criteria. The Court therefore concludes that the record did not fairly raise the question of whether Mr. Horne's impairments met or equaled a Listed Impairment, and the ALJ did not err by failing to obtain a medical expert opinion as to that issue.

**B. The ALJ's Residual Functional Capacity Determination**

Residual Functional Capacity is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)). It is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Jeffries v. Colvin*, 2013 WL 1314041, at *3 (M.D. Pa. Mar. 28, 2013) (citing SSR 96-8p). A "regular and continuing basis" is full-time employment, 8 hours a day, 5 days per week, or another similar schedule. *Id.*

Mr. Horne contends that the ALJ erred in determining his RFC by finding that he could work 8-hour days in conformity with the assessment of the State Agency medical adjudicator. In his assessment, Dr. Juan Mari-Mayans concluded that Mr. Horne could stand and/or walk with normal breaks for a total of "slightly less" than two hours in an 8-hour workday. He also concluded that Mr. Horne could sit with normal breaks for a total of about 6 hours in an 8-hour workday. As Mr. Horne

---

the ALJ's determination as to that Listing as well.

11

correctly points out, "slightly less" than 8 hours is not 8 hours. Therefore, Dr. Mari-Mayans' assessment of the work Mr. Horne could perform was not predicated on a finding that he could do that work on a regular and continuing basis. Since the ALJ accorded "significant weight" to the medical adjudicator's opinion in his RFC analysis, ECF No. 10-2 at 26, the Court concludes that the ALJ erred in determining Mr. Horne's RFC.

## C. The ALJ's Duty to Develop the Record

The ALJ has a duty to develop the record before determining the claimant is not disabled. 20 C.F.R. § 404.1545(a)(3). This duty is triggered when the record is inadequate for proper evaluation of the evidence. *Farr v. Colvin*, 2014 WL 47379, at *8 (M.D. Pa. Jan. 6, 2014). When a claimant is unrepresented by counsel, the ALJ has a heightened duty to assist him in developing a full and fair record. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). At the hearing, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* Remand is appropriate where the claimant's lack of counsel causes either prejudice or results in a hearing marked by unfairness. *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980). The essential inquiry as to whether the ALJ failed to adequately develop the record is "whether the incomplete record reveals evidentiary gaps which result in prejudice to the claimant." *Gaunthey v. Shalala*, 890 F. Supp. 401, 410 (E.D. Pa. 1995).

The Court concludes that because the ALJ erred in giving "significant weight" to the assessment of the State Agency medical adjudicator and otherwise grounded his RFC determination in his view that not enough medical evidence existed for a finding of disability, the ALJ failed to adequately develop the record. Because Mr. Horne was not represented by counsel, the ALJ had a heightened duty, where the record displayed "evidentiary gaps," to fill in those gaps. *Jozefick v.*

12

*Shalala*, 854 F. Supp. 324, 348 (M.D. Pa. 1994). Instead, in determining Mr. Horne's RFC, he relied on the State Agency medical assessment, which did not indicate the type of work Mr. Horne could perform on a regular and continuing basis, and his own opinion that Mr. Horne "did not generally receive the type of treatment one would expect" for a disabled individual. Such a determination did not satisfy the ALJ's heightened duty to scrupulously and conscientiously seek out all relevant facts. The Supreme Court has held that remand is warranted where "reasonable uncertainties" exist about an error's impact on a judgment. *Shinseki v. Sanders*, 556 U.S. 396, 414 (2009). Because the ALJ's determination of Mr. Horne's RFC was erroneous, reasonable uncertainties exist as to Mr. Horne's actual RFC or his capability of working on a regular and continuing basis at all. Mr. Horne was therefore prejudiced by the ALJ's error. Accordingly, the Court will vacate the ALJ's decision and remand the case for a rehearing.

Mr. Horne argues that the ALJ further failed to adequately develop the record in three other respects – by neglecting to obtain medical records from Dr. Stracci that he said at the hearing he would acquire for Mr. Horne, by failing to order a consultative examination of Mr. Horne, and by failing to develop Mr. Horne's educational background and mental capacity. An ALJ's duty to develop the record includes arranging for a consultative examination if necessary and making every reasonable effort to help the claimant obtain medical reports from his own medical sources. 20 C.F.R. § 404.1545(a)(3).

Because the Court will order a rehearing of this case partly on the basis that the ALJ failed to adequately develop the record with regard to Mr. Horne's RFC, Mr. Horne will have an opportunity to introduce further medical records into the record or request that the ALJ obtain them.[2] He will

---

[2] In his reply brief, Mr. Horne points out that Exhibits 6F and higher, as well as all school records contained in the

also be able to introduce any school or other records relevant to education or mental capacity that were not initially before the ALJ.[3] The decision as to whether to order a consultative examination is within the sound discretion of the ALJ. *Thompson v. Halter*, 45 Fed. Appx. 146, 149 (3d Cir. 2002). While such an examination may be appropriate to adequately develop the record, the Court leaves that determination to the ALJ at the rehearing. Accordingly, the Court need not reach the issue of whether the ALJ failed to develop the record in these respects.

## D. The ALJ's Hypothetical Questions

Mr. Horne also contends that the ALJ erred in failing to pose a hypothetical question to the VE that fairly encompassed all of his impairments. The VE's testimony concerning the claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual impairments. *Burns*, 312 F.3d 113, 123 (3d Cir. 2002) (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). Hypotheticals posed to the VE must reflect all of the claimant's impairments. *Id.*, citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). If a hypothetical does not include specific impairments indicated by undisputed medical evidence in the record, the VE's response is not

---

transcript, were first submitted to the Appeals Council by the attorney he hired following the ALJ's decision. On appeal to this Court, where the ALJ's decision is the final determination of the Commissioner, records presented for the first time at the Appeals Council level may only be considered upon a showing that they contain new evidence which is material, and that there is good cause for the failure to incorporate such evidence into the record in the prior proceeding. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) (citing Sentence 6 of 42 U.S.C. § 405(g)). However, because the Court is remanding this case to the ALJ for a rehearing pursuant to Sentence 4 of 42 U.S.C. § 405(g), that issue is mooted, and Mr. Horne will have an opportunity to present new evidence to the ALJ.

[3] The Court notes that it found nothing in the record to indicate that the ALJ had a duty to further develop the record as to Mr. Horne's education or mental capacity, as Mr. Horne did not claim or produce evidence as to such issues before or at the hearing. An ALJ is not required to search out all relevant evidence which might be available, as such a requirement would essentially shift the burden of proof to the government. *Purnell v. Astrue*, 662 F. Supp. 2d 402, 409 (E.D. Pa. 2009) (quoting *Hess v. Sec'y of Health, Ed., and Welfare*, 497 F.2d 837, 840 (3d Cir. 1974)). However, if Mr. Horne introduces such evidence into the record or at the rehearing, the ALJ may have a duty to develop the record as to those factors.

considered substantial evidence. *Id.*, citing *Podedworny*, 745 F.2d at 218. As the Court is remanding this case to the ALJ for a rehearing, where the ALJ will pose new hypotheticals to a VE, it need not address the issue of whether the VE's hypothetical question testimony at the initial hearing was properly supported.

## IV.     CONCLUSION

Because the ALJ failed to adequately develop the record and erred in determining Mr. Horne's RFC, the Court will grant Mr. Horne's Motion for Summary Judgment to the extent that it will vacate the ALJ's decision and remand the case for a rehearing consistent with the Court's Opinion, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

An appropriate Order will follow.


Mark R. Hornak
United States District Judge


Dated: February 14th, 2014
cc: All counsel of record